UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-9-MOC-DCK

| | |
|---|---|
| CRAIG CUNNINGHAM, ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DAYBREAK SOLAR POWER, LLC, ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss the Complaint. (Doc. No. 14). Upon careful consideration of the arguments submitted by the parties, this matter is **TRANSFERRED** to the United States District Court for the Northern District of Texas.

I. BACKGROUND

Plaintiff Craig Cunningham filed a complaint with this Court on January 7, 2022, under the Telephone Consumer Protection Act ("TCPA") and the North Carolina analogue to the federal law, the North Carolina Telephone Solicitations Act ("NCTSA") against Defendant Daybreak Solar Power, LLC. (Doc. No. 1 at ¶¶ 1, 3); see 47 U.S.C. § 227 et seq., N.C. GEN. STAT. § 75-100 et seq. Plaintiff alleges that he received a phone call on December 23, 2021 at his personal phone number. (Id. at ¶¶ 22, 24). He alleges that there was a "pop" sound at the beginning of the call, after which a voice said, "Hi, this is Brian Lee calling on behalf of The-Solar-Project.com." (Id. at ¶ 27). Plaintiff then alleges that someone named Yesenia continued the conversation with him. (Id. at ¶ 28). Plaintiff alleges that Yesenia is an employee of Defendant and that she asked him questions about his marital status and his credit score. (Id. at ¶ 29). Then, Plaintiff alleges that after

he had "multiple calls with Daybreak [e]mployees" to ascertain the origin of the solicitation call, Defendant or its agents "claimed that the Plaintiff must have gone on 'some website' but were unable or unwilling" to point to a specific website that Plaintiff visited. (Id. at ¶ 30).

Plaintiff contends that other individuals have complained about receiving "telemarketing" calls from Defendant, citing a single Better Business Bureau ("BBB") posting about the company and a single review from Glassdoor (an employment website) posting supposedly written by a prior employee as evidence of his claim. (Id. at ¶¶ 31–32). Finally, Plaintiff argues that he did not provide "prior express written consent to receive the calls" and that he and "other call recipients" were harmed by the call because they were (1) "temporarily deprived of legitimate use of their phones" while "their phone lines were tied up during the telemarketing calls" and (2) "their privacy was improperly invaded." (Id. at ¶ 33).

Defendant has filed a motion to dismiss pursuant to the Federal Rules of Civil Procedure, specifically citing Rule 12(b)(3) for improper venue, Rule 12(b)(6) for failure to state a plausible claim for relief, and 12(b)(1) for lack of federal subject matter jurisdiction due to Plaintiff's failure to plead facts demonstrating standing under Article III of the United States Constitution. (Doc. No. 14 at 1). When considering a motion to dismiss that arises under concurrent provisions of the Federal Rules of Civil Procedure, courts first consider venue and, if found improper, will then leave the other elements of the motion to be decided on the merits in the court with proper venue. See Atl. Marine Constr. Co., v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 55 (2013); DFW Aviation, LLC v. Mansfield Heliflight, Inc., No. 1:19-CV-481-LY, 2019 WL 5072883, at *2 (W.D. Tex. Oct. 9, 2019); A-76 Techs., Inc. v. Mass Mgmt., LLC, No. 3:21-cv-00496-FDW-DSC, 2021 WL 6202790, at *1 (W.D.N.C. Oct. 6, 2021).

## II. STANDARD OF REVIEW

Rule 12(b)(3) allows courts to dismiss an action for improper venue. FED. R. CIV. P. 12(b)(3). Alternatively, a court has discretion to transfer a case brought before it in an improper venue to a proper one under 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a) "if it be in the interest of justice." § 1406(a). Moreover, a court "may sua sponte consider transfer" even if it has not been specifically raised by the parties. Catawba Riverkeeper Found. v. N.C. Dep't of Transp., No. 3:12-cv-559-RJC-DCK, 2014 WL 7408645, at *5 (W.D.N.C. Dec. 31, 2014) (citing Feller v. Brock, 802 F.2d 722, 731 n. 7 (4th Cir. 1986)). Transfer is allowable "[f]or the convenience of parties and witnesses [or] in the interest of justice" to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Under a challenge to venue, it is well-established that a plaintiff bears the burden to "establish that venue is proper in the judicial district in which the plaintiff has brought the action." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996); Oates v. N.C. State Treasurer, No. 3:15-CV-541-GCM, 2016 WL 3226012, at *1 (W.D.N.C. June 7, 2016) (internal citation omitted). While federal "[c]ourts decide questions of venue largely on the basis of the pleadings," they are "not obliged, however, to treat all allegations as true, no matter how speculative, conclusory, or lacking of necessary supporting factual allegations" and, instead, "a complaint must allege a factual basis for its legal claims" for venue. Bartko v. Wheeler, No. 1:13CV1006, 2014 WL 29441, at *8 (M.D.N.C. Jan. 3, 2014) (internal citation omitted). Notably, when a federal claim is properly dismissed under Rule 12(b)(3), that court will decline to exercise supplemental jurisdiction over that plaintiff's corresponding state law claim. See e.g., Snow v. Gen. Elec. Co., No. 5:18-CV-511-FL, 2019 WL 2500407, at *7 (E.D.N.C. June 14, 2019), appeal dismissed, No. 19-1724, 2019 WL 7500455 (4th Cir. Dec. 30, 2019) (declining to exercise

supplemental jurisdiction under 28 U.S.C. § 1367 over state claims after TCPA claim dismissed).

To determine whether venue is proper, a "court must determine whether the case falls within one of the [ ] categories set out in [28 U.S.C.] § 1391(b)." Atl. Marine, 571 U.S. at 55. Under 28 U.S.C. § 1391(b), a civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; or
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b).[1] For individuals, "residence for venue purposes is the place of permanent residence or legal domicile, not where they may otherwise establish ties or occasionally work or visit." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 634 (E.D. Va. 2003). In contrast, for venue, corporations "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). Courts have interpreted this as only authorizing venue where there is specific jurisdiction over the defendant. See, e.g., Barajas-Murphy v. Online Learning Consortium, Inc., No. CV 18-08339-AB (SSx), 2019 WL 13044623, at *2 (C.D. Cal. Jan. 9, 2019). Specific jurisdiction requires that the defendant "purposefully avail[ ] itself of the privilege of conducting activities within the forum State" and even then, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the state. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021). Further, in TCPA cases like this one, courts have widely held that venue

---

[1] Though § 1391(b) includes a third route to venue, Plaintiff does not allege that this subsection applies to his case, and therefore, the Court does not reach that subsection in its analysis. (Doc. No. 1 at ¶ 10).

is proper under 28 U.S.C. § 1391(b)(1) or (b)(2) in the district from which the at-issue call originated or, more commonly, where the call was received.[2]

Even if, under the analysis of § 1391(b) set forth above, a court deems itself an improper venue, Rule 12(b)(3) does not operate as a categorical requirement of dismissal, rather, that court retains broad discretion to transfer the case to a proper venue. See Norwood v. Kirkpatrick, 349 U.S. 29, 32–33 (1955). Since the codification of the transfer provisions, 28 U.S.C. §§ 1404, 1406, when that option is available, courts prefer to transfer cases over dismissing them outright under Rule 12(b)(3). See, e.g., Datasouth Comput. Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446 (W.D.N.C. 1989); Simpson Performance Prods., Inc. v. Necksgen, Inc., No. 5:16-CV-00153-RLV-DCK, 2017 WL 3616764 (W.D.N.C. Aug. 23, 2017); DFW Aviation, No. 1:19-CV-481-LY, 2019 WL 5072883, at *2; A-76 Techs., No. 3:21-cv-00496-FDW-DSC, 2021 WL 6202790, at *1. This preference reflects general policy that a proper venue should make the final call on the total dismissal of a claim—an improper venue should not end an otherwise valid case on what could amount to a technicality. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 464 (1962); A-76 Techs., No. 3:21-cv-00496-FDW-DSC, 2021 WL 6202790, at *1. Moreover, forum shopping is equally cured by transfer as it is dismissal, and this preference supports notions of judicial economy; transfer over dismissal prevents the time-consuming process of re-filing an entire case with another venue

---

[2] See, e.g., Fitzhenry v. Guardian Prot. Servs., Inc., No. 16-1253, 2016 WL 6652760, at *1 (W.D. Pa. Nov. 9, 2016) ("District courts find proper venue where the alleged injury occurred which, in a TCPA action, is where the telephone call was received.") (collecting cases and granting motion); Blair v. CBE Grp., Inc., No. 13-CV-134-MMA(WVG), 2013 WL 2029155, at *2 (S.D. Cal. May 13, 2013) (dismissing for improper venue in TCPA case where at-issue calls did not originate in nor were they received by named plaintiff in the district where complaint was filed); LaGuardia v. Designer Brands, Inc., No. 19cv1568 JM(BLM), 2020 WL 2463385, at *3–6 (S.D. Cal. May 7, 2020).

while relieving the improper venue's docket. Id.; Simpson, No. 5:16-CV-00153-RLV-DCK, 2017 WL 3616764.

In deciding whether to transfer or dismiss a case for improper venue, a court balances certain factors to find if the transfer is "in the interest of justice." § 1406(a). Those factors include:

(1) plaintiff's initial choice of forum;

(2) the residence of the parties;

(3) the relative ease of access of proof;

(4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

(5) the possibility of a jury view;

(6) the enforceability of a judgment, if obtained;

(7) the relative advantages and obstacles to a fair trial;

(8) other practical problems that make a trial easy, expeditious, and inexpensive;

(9) the administrative difficulties of court congestion;

(10) the interest in having localized controversies settled at home; and

(11) the avoidance of unnecessary problems with conflict of laws.

Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008) (citing Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990)). A court must balance these factors and make the assessment qualitatively, not merely quantitatively. Id. If the court determines that it is the improper venue, it will then select a forum that satisfies the test under 28 U.S.C. § 1391(b) for proper venue and, in the court's view, is the best option under the factors set forth above and in Scholl.

### III.     DISCUSSION

#### a.  Rule 12(b)(3) Analysis

Here, Defendant argues that the Western District of North Carolina is an improper venue for this claim, and therefore must be dismissed to be re-filed elsewhere. (Doc. No. 14 at 16). The Court agrees with Defendant that this is an improper venue, but rather than dismiss this action, the Court exercises its discretion to transfer venue, as both parties have consented to transfer in their pleadings. (Doc. No. 14 at n. 2; Doc. No. 15 at n. 1). Moreover, the Court declines to exercise supplemental jurisdiction over Plaintiff's NCTSA claim and sever the action. Rather, the Court transfers Plaintiff's claim in its entirety, including that arising under the NCTSA, to the Northern District of Texas.

Plaintiff bears the burden of alleging a sufficient and non-conclusory factual basis to rebut Defendant's challenge to venue under § 1391(b)(1)–(2), but he has not met that burden. Plaintiff alleges no facts to support his contention that venue is proper under the law in this district. Plaintiff argues that venue in this district is proper under § 1391(b)(1), but he does not sufficiently support the requisite allegation that Defendant resides in North Carolina. By Plaintiff's own admission, Defendant is headquartered in Texas. (Doc. No. 1 at ¶ 7). Even so, Plaintiff could have set forth proof that the Court has specific jurisdiction over Defendant under § 1391(c), thus requiring this court to claim venue under § 1391(b)(1), but he did not. Since specific jurisdiction under § 1391(c) and Plaintiff's second claim to venue under § 1391(b)(2) operate under nearly the same standard—location of events giving rise to the claim—the Court disposes of both here.

Plaintiff does not allege and offers no support of even an assumption of an allegation that this "civil action in question" arose in North Carolina, nor does he show that "a substantial part of the events . . . giving rise to the claim" occurred in North Carolina. Plaintiff offers no evidence of

Defendant doing business in North Carolina or otherwise "purposefully availing" themselves of the resources or benefits of North Carolina. Plaintiff generally alleges in his "Jurisdiction & Venue" section of his Complaint that venue is proper "because the telemarketing calls at issue were made into this District." (Doc. No. 1 at ¶ 10). However, this is, again, a vague conclusory claim that Plaintiff does not attempt to support anywhere else in his Complaint—he never specifically says that *he* was in North Carolina when he received the call, and notably, there are not "calls at issue" in this case, rather, there is a single call at issue. Further, Plaintiff does not allege that the call originated in North Carolina, or that his claim arises out of any conduct by Defendant in North Carolina. Even under his potential class action claim, Plaintiff alleges no actual, specific instances of prospective class members receiving calls in North Carolina; that claim is conjecture at most. (Id. at ¶¶ 35–46). This general lack of support is fatal to Plaintiff's claim of proper venue in this district. The Court cannot assume that it has personal jurisdiction over an entity or that it is the proper venue for a lawsuit based on bald claims alone.

    **b. Transfer Analysis**

Given that the Court is an improper venue for Plaintiff's claims, it must now decide whether to grant Defendant's Motion to Dismiss or to exercise its discretion to transfer the case to a proper venue. Based on the eleven factors set forth in Scholl above, the Court chooses to transfer this case to the Northern District of Texas, rather than dismiss it entirely. The analysis of those eleven factors is set forth below.

The only factor that seems to squarely favor Plaintiff and would keep the case in this district is factor one: plaintiff's initial choice of forum. The rest of the factors either favor transfer to Texas or do not favor either forum. Factor two, the residence of the parties, requires some analysis pertaining to Plaintiff's residence. Though Plaintiff asserts that he maintains a residence in North

Carolina, residence for the purpose of venue may not be based on a location that a party occasionally visits or in which they work; it must be a permanent residence or legal domicile, neither of which Plaintiff claims is North Carolina. Since the Court may consider extrinsic evidence in determining a proper venue,[3] and Defendant has supplied the Court with uncontroverted evidence that Plaintiff's permanent residence, by his own admission, is in Texas, the Court finds that Plaintiff's permanent residence is in Texas. Thus, the Court finds that Factor two is in favor of transfer. Factors three, four, seven, eight, and ten favor transfer as well, given that both parties reside in Texas. (Doc. No. 1 at ¶ 7; Doc. No. 14 at 11). Access to proof, availability of witnesses, and other trial-related issues would likely be made much easier to resolve in Texas, given the parties' residences in that state. Moreover, Texas has the strongest interest in resolving this issue, since it deals with two residents of that state. Convenience and practicality prod those factors toward transfer to another forum. Factors five, nine, and eleven are likely neutral given the little information supplied by either party regarding transfer. Factor six favors transfer as well because it would be much easier for a Texas court to enforce a judgment against a Texas plaintiff or defendant given the stronger ties of those parties with that state. Finally, it is important to note that both parties have consented to the transfer in their pleadings. (Doc. No. 15 at n. 1; Doc. No. 14 at n. 2).

       The final question is where the Court should transfer this matter, which turns on where the parties reside. Defendant resides in the Northern District of Texas, and through the analysis set forth above, Plaintiff's residence is in Texas as well. Therefore, the Court applies § 1391(b)(1) to choose the proper venue. Under that rule, since both parties reside in Texas, the proper district is the district in which Defendant resides: the Northern District of Texas. Since the Court elects to

---

[3] Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 549–50 (4th Cir. 2006).

transfer the case to the Northern District of Texas, it leaves the issues of the 12(b)(6) motion to that court.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that this matter should be transferred to the Northern District of Texas.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. this action is **TRANSFERRED** to the United States District Court for the Northern District of Texas;

2. The Clerk is instructed to **TERMINATE** this action in this district.

Signed: July 13, 2022



Max O. Cogburn Jr
United States District Judge